IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CENTRAL LABORERS' PENSION,
WELFARE AND ANNUITY FUNDS,
Plaintiff,

v.

WYANDOTTE CORP. and
KEVIN KENT,
Defendants.

Case No. 19–CV–00927–JPG

## MEMORANDUM & ORDER

**I.  INTRODUCTION**

This is a suit regarding allegedly unpaid fringe benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). Before the Court is Defendant Kent's Motion to Dismiss and Plaintiffs Central Laborers' Pension, Welfare & Annuity Funds' Motion for Leave to File Plaintiffs' Second Amended Complaint. For the reasons that follow, Defendant Kent's Motion to Dismiss is **DENIED**, and Plaintiffs' Motion for Leave to File Plaintiff's Second Amended Complaint is **GRANTED**.

**II.  PROCEDURAL & FACTUAL HISTORY**

Plaintiffs Central Laborers' Pension, Welfare & Annuity Funds (or the "Funds") were established pursuant to an employee-benefit plan to provide benefits to eligible workers. Defendant Wyandotte Corporation is an employer-participant in the Funds.

In 2017, Defendant Wyandotte Corporation—through its director of operations, Defendant Kent—entered into a Memorandum of Agreement with the affiliated local unions of the Laborers' International Union of North America. Under the terms of the Memorandum of Agreement,

Defendant Wyandotte Corporation agreed to make fringe-benefit contributions to the Funds. (Mem. of Agreement 29–30, ECF No. 1-4).

The Pension and Welfare Funds are separate and independent trust funds that were created, organized, administered, and governed by separate trust agreements. The Annuity Fund was established in the Pension Fund Agreement and shares the same provisions, powers, and duties; but it too is separate and independent from the Pension and Welfare Funds. (Restated Agreement & Decl. of Trust of the Cent. Laborers' Pension Fund ("Pension Fund Agreement"), ECF No. 1-5; Restated Agreement & Decl. of Trust of the Cent. Laborers' Welfare Fund ("Welfare Fund Agreement"), ECF No. 1-6).

Although the Pension Fund Agreement and Welfare Fund Agreement contain similar provisions, they are not identical. For example, different associations are parties to the agreements; the Pension Fund Agreement contains a claims-review procedure and an arbitration provision, whereas the Welfare Fund Agreement does not; and, relevant to Defendant Kent's Motion to Dismiss, the agreements contain different provisions regarding personal liability of corporate officers and directors. The Pension Fund Agreement states the following:

> Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, **shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct.**

(Pension Fund Agreement 21) (emphasis added). By contrast, the Welfare Fund Agreement lacks operative language and is an incomplete sentence:

> Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his

> Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct.

(Welfare Fund Agreement 21).

Plaintiffs filed suit against Defendants to collect unpaid fringe benefits.[1] Defendant Kent filed a Motion to Dismiss arguing that he should not be held personally liable for Defendant Wyandotte Corporation's alleged violation of the Memorandum of Agreement. Plaintiffs responded, pointing to the personal-liability provision in the Pension Fund Agreement.

## III. JURISDICTION

This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of Plaintiffs' ERISA claims. ERISA empowers certain parties to enforce a substantive right to fringe benefits. Two provisions of ERISA are relevant here. In 29 U.S.C. § 1132, Congress expressly conferred federal courts with jurisdiction over ERISA claims and authorized certain parties to enforce its provisions. This includes employee-benefit plans. See Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co., 698 F.2d 320, 326 (7th Cir. 1993). And § 1145 supplies the substantive right that the Funds seek to enforce: Recovery for delinquent contributions. Accordingly, this Court has subject-matter jurisdiction over Plaintiffs' ERISA claims.

## IV. LAW & ANALYSIS

---

[1] The Court notes that the Pension, Welfare, and Annuity Funds are separate entities that are supported by their own assets. See MICHAEL B. SNYDER, 1 EMP. BENEFITS HANDBOOK § 1292 (2019). As such, they have separate rights to file suit. See, e.g., Midwest Operating Eng'rs Welfare Fund v. Clev. Quarry, 40 F. Supp. 3d 1033, 1034 (N.D. Ill. 2014) (welfare fund and pension fund sued as individual plaintiffs); Bakery & Confectionery Union v. United Baking Co., 495 F. Supp. 170, 172 (W.D. Pa. 1980) ("The funds appear to be separate entities and trusts with separate rights to ensure the payment of contributions to them."). However, it is common practice in this Court to allow the entities to sue together as a single party. E.g., Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Allen, No. 04–CV–4155–JPG, 2007 WL 433543 (S.D. Ill. Feb. 6, 2007); Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Acorn Indus., 05–CV–4123–JPG, 2006 WL 120275 (S.D. Ill. Jan. 17, 2006).

As separate funds, the Pension, Welfare, and Annuity Funds are governed by independent agreements. Although the Pension Fund Agreement (which includes the Annuity Fund) provides for personal liability of corporate officers and directors when an employer fails to meet its fringe-benefit obligations, the language of the Welfare Fund Agreement is ambiguous: The key language establishing personal liability is absent, resulting in an incomplete sentence. Whether this omission was due to poor drafting or consciously done as a concession during contract negotiations is unclear. Absent further evidence of the parties' intent at the time of drafting, the Court is not positioned to relieve Defendant Kent from liability from the Welfare Fund Agreement. However, since no such ambiguity exists in the Pension Fund Agreement, and corporate entities may contract around the general rule against personal liability for officers and directors, Defendant Kent can be held personally liable for the alleged failure to make contributions to the Pension and Annuity Funds. Accordingly, Defendant Kent's Motion to Dismiss is **DENIED**.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes a party to seek dismissal of the complaint for failure to state a claim in which relief can be granted. To survive a motion to dismiss, the factual allegations in the complaint must plausibly suggest "a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In ruling on the motion, the Court must accept all well-pleaded allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor. Twombly, 550 U.S. at 555. Attached contracts are considered parts of the pleading, FED. R. CIV. P. 10(c); and to the extent

that the contracts contradict the Amended Complaint, "the contracts trump the facts or allegations presented in the [Amended] Complaint," Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 563, 466 (7th Cir. 2007). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### B. Defendant Kent's Motion to Dismiss is Denied Because the Pension Fund Agreement Provides for Personal Liability

Defendant Kent contends that he is not personally liable for Defendant Wyandotte Corporation's alleged failure to make fringe-benefits contributions. The general rule is that Congress did not intend for § 1145 of ERISA to impose personal liability on corporate officers. Sullivan v. Cox, 78 F.3d 322, 325 (7th Cir. 1996). That rule, however, is "upset where individuals contractually accept responsibility for corporate liability, thus becoming 'employers obligated to make contributions' under Section 1145." Id. Defendant Kent agrees that an agent is generally "not personally bound by the terms of the contract which he executes in [sic] behalf of his principal *unless he agrees to be personally liable*." (Def. Kent's Mot. to Dismiss 4) (emphasis added).

In the Amended Complaint, Plaintiff erroneously refers to "the Trust Agreement" as if it was a single document. But there are two agreements: The Pension Fund Agreement (which includes the Annuity Fund) and the Welfare Fund Agreement. While the language in these separate agreements is generally similar, it differs with respect to the consequences in the event of breach. Specifically, the Pension Fund Agreement expressly states that an employer's officers and directors carry personal liability; the Welfare Fund Agreement—entered into three years after the Pension Fund Agreement—does not. Rather, the Welfare Fund Agreement contains an incomplete sentence that otherwise mirrors that of the Pension Fund Agreement, absent the operative, liability-causing language. As a separate entity, the Welfare Fund is not bound by the Pension Fund Agreement.

Where the Welfare Fund Agreement is ambiguous, however, the Pension Fund Agreement is not. In <u>Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co., Inc.</u>, No. 06–1002–JPG, 2012 WL 716647, at *4–5 (S.D. Ill. March 5, 2012), this Court confronted the same issue of whether a corporate officer could be held personally liable under the terms of a pension plan's trust agreement. As here, the corporate officer signed a collective bargaining agreement in his official capacity on behalf of his employer. <u>Id.</u> That agreement also bound the employer to the pension plan's trust agreement, which contained a provision that held officers and directors personally liable in the event of unpaid fringe-benefit contributions. <u>Id.</u> At the motion to dismiss stage, the Court found that the provision was binding on the corporate officer, stating that "[a]lthough Central's complaint does not explicitly allege *willful* violation of the Restated Trust, its allegations of breach stem from conduct that may be shown as willful upon commencement of formal discovery." <u>Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co., Inc.</u>, No. 10–CV–611–JPG–PMF, 2012 WL 1549226, at *4 (S.D. Ill. April 21, 2011) (emphasis in original). Accordingly, the Court denied the corporate officer's motion to dismiss. Other courts have come to the similar conclusions when confronted with this question. <u>See, e.g.</u>, <u>Cent. Laborers' Pension Fund v. Demex Grp., Inc.</u>, 158 F. Supp. 3d 725, 731–32 (C.D. Ill. 2016); <u>R.R. Maint. & Indus. Health & Welfare Fund v. Hacker</u>, No. 10–3305, 2011 WL 5008311, at *5–6 (C.D. Ill. Oct. 20, 2011).

The reasoning in <u>W.C. Beiser Concrete Co., Inc.</u> holds true here. At this early stage of the case, Plaintiffs alleged enough facts to raise their right to relief above mere speculation. Discovery will be important for revealing the role that Defendant Kent played in the alleged violations, as well as the parties' intent when drafting the ambiguous provision in the Welfare Fund Agreement.

V. **CONCLUSION**

Defendant Kent's Motion to Dismiss is **DENIED**, and Plaintiffs Central Laborers' Pension, Welfare & Annuity Funds' Motion for Leave to File Plaintiff's Second Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

**Dated: Monday, January 13, 2020**

<u>s/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**